## DECEMBER TERM, 1843.

### MILLER v. GASKINS.

M. indorsed a note in favor of G., upon which the maker afterwards paid part, and renewed the balance by a new note, which M. also indorsed; suit was afterwards brought, and judgment obtained against M., when he exhibited his bill, stating that the note had been given for an illegal consideration, which he was not aware of until after judgment was given against him, and therefore he did not defend at law; *held*, that the excuse, for not making the defence at law, was insufficient, and equity could grant no relief.

G. sold B. and W. negroes, introduced into this State in violation of law; B. and W. executed a note in part payment, which M. indorsed; G. sued B. and W. at law, upon the note, and they set up the illegality of the consideration of the note, and were discharged. G., at the same time, sued M., the indorser, who, being ignorant of the consideration of the note, made no defence, and judgment was had against him. M. exhibited his bill, setting forth these facts, and praying for a perpetual injunction against the judgment at law; *held*, that M. was entitled to the relief asked, and that the injunction should be perpetually enjoined.

THE opinion of the Chancellor is referred to for the facts of the case.

CHANCELLOR. This case was submitted on a motion to dissolve the injunction for want of equity. In January, 1837, the complainant became the accommodation indorser of Bailey and Waide, on a note to the defendant, for the sum of seven thousand and forty dollars. A payment was afterwards made on the note, to the amount of two thousand three hundred and forty dollars, and a new note, with the same indorsers, given for the balance remaining due. This latter note was put in suit against the complainant in the Adams Circuit Court, and a judgment obtained thereon, at the May term, 1840, which he now seeks to enjoin, upon the ground: 1. That the consideration of the note was the sale of negro slaves, introduced into this State as merchandise, in violation of the provisions of the constitution on that subject. 2. That unlawful and usurious interest was added into said notes, as part of the principal sum. He alleges, that he had no knowlege of these grounds of defence, until after the rendition of the judgment against him. There can be no doubt, that the defendant might have availed him-

self of either or both these grounds, as matter of defence at law. In regard to the first, the case of *Green* v. *Robinson*, 5 How. Rep. 80, shows that it is a legal defence, and that, if the defendant neglects to make it at law, he cannot be relieved in equity. The second ground was equally a matter for defence at law ; a court of chancery has no jurisdiction over a question of usury, except for the purpose of affording a discovery. 10 Pet. Rep. 497 ; 3 John. Ch. Rep. 355. The question then is : Does the complainant show a sufficient excuse for failing to make his defence at law ? It is not sufficient, that the defendant did not know of the grounds of defence at the time of the trial ; it must appear, that he could not have obtained such knowledge by the use of ordinary diligence. There is not the slightest reason shown by the bill, why the defendant could not, or did not, possess himself, before the trial at law, of the information which he says he has since obtained. It is quite clear, that the same sources of information were open to him, as well before, as since' ; and that the same measure of diligence, exercised before the trial, would have been as effective in advising him of his defence, as was that which he exerted afterwards. If, after having indorsed one note, and afterwards renewed it by indorsing another, he failed to learn what was the moving consideration, nothing could suggest itself more naturally, than that he should recur to the maker of the note for whose consideration he indorsed, and from whom full and accurate information could readily have been obtained. I am well satisfied, that the excuse for failing to defend at law, is wholly insufficient to authorize this Court to disturb the judgment ; and, if this constituted the complainant's only claim to relief, I should dissolve the injunction. But the bill discloses other facts, upon which I think the injunction should be retained. It appears, that Gaskins, in a separate suit against the makers, upon the same note, to which the complainant was an accommodation indorser, recovered a judgment in 1839. The makers having relied upon the illegality of the consideration of the note, and being overruled in that defence, prosecuted an appeal to the Supreme Court, where, in April, 1842, the judgment was recovered, and a final judgment rendered in favor of the makers of said note, discharging them from all liability thereon. Here,

then, is the anomalous case of the makers of a note, who were the principal and real debtors, being discharged because of the illegality of the consideration of the note, while it is attempted, upon a rigid and technical rule of law, to hold the mere accommodation indorser of the same note liable for its payment. It is against the first principles of equity, as well as the very nature of the relations of principal and surety, to hold the latter liable after the former has been discharged ; hence, the universal rule, that whatever discharges the principal, discharges the surety also ; when the principal is released, there is no longer any obligation, legal or equitable, resting upon the surety. And the rule must be the same, whether such discharge takes place by agreement, or by operation of the law, brought into activity by the agency of the creditor. The right of a creditor to make the surety liable, depends upon his right to make the principal liable, and if his claim upon the latter has become extinguished, no matter by what means, he can have no claim, in the eye of a court of equity, against the former. The reason of this rule is found in the nature of the relation of a surety, and in his right to be *substituted* to all the securities, of whatever kind, held by the creditor from the principal debtor ; which substitution could not, of course, take place, where the principal debtor had been discharged from all liability. This case affords an apt illustration of the equity and propriety of the rule to which I have adverted. If the complainant is compelled to pay this judgment, when the principal debtor stands discharged, he can have no remedy whatever for reimbursement. He would be told, that he paid it in his own wrong. Under this view of the case, although the complainant has not shown such diligence as to bring himself strictly within the rules by which courts of equity are guided in granting relief against judgments at law ; yet, I think it would be a fraud in the defendant, and against good conscience, to enforce his judgment against the complainant, after the principal debtors have been discharged. In the case of the *Marine Ins. Co.* v. *Hodgson* (7 Cranch, 332), the Supreme Court say, that there may be cases, where a court of equity ought to relieve a person who might have, but failed to defend himself at law. The court say, that such cases rarely occur, and the equity of the

Miller *v.* Gaskins.

complainant must be free from doubt, and the judgment must be one of which it would be against conscience for the party who has obtained it to avail himself. I think, that the case before me is one of so peculiar a character, as to justly entitle it to a place under the rare exception, which, that court admits, may be made to the general rule. It is needless to say, that the complainant, as an accommodation indorser, stands in the light of a surety, entitled to all the rights and remedies of such. The motion to dissolve the injunction, for want of equity, must be overruled.